IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

IN RE: HUGH MACK ELLIS and                          3:10-bk-10429
       NIKKI LANICE ELLIS, Debtors                      CHAPTER 13

## MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION TO CLAIMED EXEMPTIONS

On May 5, 2011, the Court heard the *Objection to Claimed Exemptions* filed by W.L. Smith and Loyd Dorsey (**"Smith and Dorsey"**). Harry S. Hurst, Jr. appeared on behalf of Smith and Dorsey, and G. Mike DeLoache appeared on behalf of the Debtors. At the close of evidence, the Court took the matter under advisement.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

Smith and Dorsey object to the Debtors' claimed homestead exemption for real property on which they did not live at the time they filed bankruptcy. The issue presented is whether their intention to move back onto the property at some point in the future satisfies the requirements for claiming a homestead exemption under Arkansas law. As explained herein, the Court finds it does not, and sustains Smith and Dorsey's *Objection to Claimed Exemptions*.

# FACTS[1]

In 2006, Smith and Dorsey agreed to purchase from the Debtors real property located at 680 CR 793, Brookland, Arkansas 72417 (the **"Brookland Property"**) for a total price of $289,000. At the time, the Debtors did not hold title to the Brookland Property, but still owed Kelly Couch on a Lease with Option to Purchase. Smith and Dorsey made a $5,000 non-refundable deposit prior to executing a written purchase agreement on April 6, 2006. The written purchase agreement provided that Smith and Dorsey were to pay $150,000 by April 7, 2006, by direct wire deposit. They paid the $150,000 on April 14, 2006. Smith and Dorsey were then given 60 days to pay the remaining balance of $134,000. The agreement was not carried out, and the Debtors never received the $134,000 remaining balance.[2]

The Debtors used the funds they received from Smith and Dorsey to pay off the remaining balance due to Couch on the Brookland Property and obtained a Warranty Deed to the property on May 9, 2006. In August 2006, the Debtors purchased a home at 4913 Inverness Run in the Sage Meadows subdivision in Jonesboro, Arkansas (the **"Sage Meadows Property"**). Ms. Ellis testified that she and her husband moved directly from the Brookland Property to the Sage Meadows Property in late August 2006, and at that time, they

---

[1] These facts are based on the evidence presented at trial. Unless otherwise noted, testimony provided was uncontroverted, credible, and taken as fact.

[2] Smith and Dorsey ultimately sued the Debtors in the Circuit Court of Craighead County, Arkansas (the **"State Court"**) in 2008 for fraud, conversion and breach of contract. The State Court ruled in favor of the Debtors on the fraud and conversion claims but awarded Smith and Dorsey $150,000 plus interest for breach of contract, and a $40,000 attorney's fee since they were the prevailing parties on the contract claim.

intended to make the Sage Meadows Property their permanent residence because they believed Smith and Dorsey would complete their purchase of the Brookland Property. Two of her three children and one grandchild stayed at the Brookland Property for another year, while one of the Debtors' children moved with them to Sage Meadows. Ms. Ellis testified that although her horses were on the Brookland Property until a few months before trial, she and her husband had not stayed on the property since they moved in 2006. She also testified that the mobile home on the Brookland Property had been sold sometime after her children left the property, and it was not on the property at the time she filed bankruptcy.

The Debtors filed bankruptcy under Chapter 13 on January 25, 2010. The address listed on their petition was the Sage Meadows Property. On Schedule C to the Debtors' bankruptcy petition, the Debtors elected to use the federal exemptions under 11 U.S.C. § 522(b)(2) and claimed an exemption of $19,136.44 for the Brookland Property under 11 U.S.C. § 522(d)(5), the so-called "wildcard" exemption.[3] They also claimed an exemption for a city lot at 205 Carey Street, Kennett, Missouri under 11 U.S.C. § 522(d)(1), the federal exemption for a residence. Ms. Ellis testified that this was a mistake, as she and her husband never intended to live on the lot in Missouri. She explained that she and her husband lived at the Sage Meadows home until March 2010, when they surrendered it because they could not continue to make payments on it. They ultimately moved to Mountain Home, Arkansas

---

[3] Pursuant to 11 U.S.C. § 522(d)(5), a debtor filing bankruptcy prior to April 1, 2010, could exempt "[t]he debtor's aggregate interest in any property, not to exceed in value $1,075 plus up to $10,825 of any unused amount of the exemption provided under paragraph (1) of this subsection."

3

in March 2010 in order to manage a resort. On April 1, 2010, the Debtors filed a notice of change of address in their bankruptcy case, listing their new address as "532 CR 505, Mountain Home, Arkansas 72653."

On September 27, 2010, the Debtors filed another notice of change of address listing "6990 Promise Land Road, Mountain Home, Arkansas 72653" as their current address. Ms. Ellis explained that they moved after losing the resort management job. Mr. Ellis found a trucking job which requires him to live within 100 miles of the terminal at Springfield, Missouri. Ms. Ellis testified that they are currently living in a 1978 camper in Mountain Home, and her husband is trying to get transferred to the Memphis terminal so that they can move their camper onto the Brookland Property in Jonesboro.

On the same date that their most recent address change was filed, the Debtors also filed an amended Schedule C in which they elected to use the applicable state law exemptions under 11 U.S.C. § 522(b)(3), and claimed an exemption for the full fair market value of the Brookland Property under Article 9, §§ 3,4 of the Arkansas Constitution, Arkansas' homestead exemption. On October 19, 2010, Smith and Dorsey filed the Objection to Claimed Exemptions, which is the subject of this Opinion.

**ANALYSIS**

It is well-settled under Arkansas law that the following requirements must be met in order to claim a homestead exemption under Arkansas' constitution. First, the party claiming the exemption must be the head of a household or married; second, the property must be occupied as a residence; and third, the party claiming the exemption must be a resident of the state of Arkansas.

*In re Webb,* 121 B.R. 827, 829 (Bankr. E.D. Ark. 1990). Further, as stated by Judge Richard Taylor in *In re Warnock*,

> As a general matter, homestead exemptions under the Arkansas Constitution are to be liberally construed in favor of the exemption. *In re Kimball,* 270 B.R. 471, 478 (Bankr. W.D. Ark. 2001). Commensurately, all presumptions are to be made in favor of preservation and retention of the homestead. *In re Jones,* 193 B.R. 503, 506 (Bankr. E.D. Ark. 1995). The burden of proof, under both federal bankruptcy law and Arkansas law, is allocated to the parties objecting to the claimed homestead exemption. Fed. R. Bankr. P. 4003(c); *Jones,* 193 B.R. at 506.

"Bankruptcy exemptions are 'fixed on the date of filing' and 'only . . . the law and facts as they exist[ed] on the date of filing the petition' are to be considered." *Jones,* 193 B.R. at 507. Once established, a homestead may be abandoned, and whether it has been abandoned or not is a question of intent. *See In re Gerrald*, 57 F.3d 652 (8th Cir. 1995) ("To abandon the homestead a party with a homestead interest must leave with the intention of never returning.") (citing *Monroe v. Monroe,* 250 Ark. 434, 465 S.W.2d 347, 349-50 (1971)). "Under Arkansas law, abandonment does not occur so long as the homestead owner has 'a fixed and unqualified intention to preserve [the property] as a homestead and to return to it.'" *In re Giles,* 443 B.R. 524, 528 (Bankr. W.D. Ark. 2011) (Barry, J.). "Continuous occupation is not required in order to preserve the character of the homestead." *Id.* (citing *Jones,* 193 B.R. at 507).

In this case, only the occupancy requirement is at issue, and more specifically, the issue presented is whether the homestead was ever abandoned, or whether it was abandoned and then reacquired. It is undisputed that at one time, prior to the filing of the Debtors' bankruptcy case, the Debtors lived on and occupied the Brookland Property as their home.

It is also undisputed that the Debtors agreed to sell the Brookland Property, and in reliance on that sale, purchased the Sage Meadows home, where they lived at the time they filed bankruptcy. Ms. Ellis testified that at the time they moved to Sage Meadows, they intended to make Sage Meadows their permanent home because they expected the sale of the Brookland Property to close. The Debtors maintain that by the time they filed bankruptcy, they were losing the Sage Meadows home, and it was then their intent to move back to the Brookland Property and make that their home at some point in the future. Smith and Dorsey assert that the Debtors abandoned their homestead when they moved to Sage Meadows and cannot now claim a homestead exemption in the Brookland Property simply by amending their schedules and stating the intent to make the Brookland Property their home.

More specifically, the Debtors argue that because the sale of the Brookland Property was never completed, they did not abandon their homestead interest in the property. In doing so, Debtors rely on *In re Kimball,* 270 B.R. 471 (Bankr. W.D. Ark. 2001) (Fussell, J.), for the proposition that the "intention to sell, in the future, without more, cannot establish a present abandonment of [a] homestead." Debtors also cite an oral ruling by this Court in the case of *In re Angela Dale*, 3:08-bk-11665 (September 10, 2008), in which this Court held that a debtor whose mobile home had been repossessed before she filed bankruptcy could still claim a homestead exemption for the lot on which the mobile home had been located. In that case, the Court found it significant that the debtor continued to collect her mail there, paid utilities on the property, and kept her belongings there. The Court held that these facts overwhelmed the fact that the debtor was not living there at the time she filed bankruptcy,

6

and because the debtor never intended to abandon the property, she could still claim the homestead exemption.

Smith and Dorsey's counsel correctly points out that Ms. Ellis acknowledged that she did in fact intend to make Sage Meadows her home, and at that time, did not intend to return to the Brookland Property. Accordingly, at that point, the Debtors' homestead interest in the Brookland Property was abandoned, and the question becomes whether the Debtors re-established a homestead interest in the Brookland Property. In arguing they cannot, Smith and Dorsey's counsel relies on *Chastain v. Arkansas Bank and Trust Co.*, 157 Ark. 423 (1923), which holds that a

> tract or lot of real estate must be occupied in good faith as a home before it becomes impressed with the character of a homestead under the law. This court has steadily adhered to the rule that actual occupancy in good faith is essential to the impressment of the homestead character. *A mere intention to occupy as a homestead in the future is not sufficient.*

*Id.* (citations omitted) (emphasis added). Smith and Dorsey's counsel further argued that the Debtors have not impressed a homestead character upon the Brookland Property and have not taken any actions to manifest their intent to return to it as their home. Specifically, Smith and Dorsey point to the fact that there is no dwelling on the property, the Debtors have not stayed there at all since they left in 2006, and there are presently no utilities connected at the property.

The Court agrees. The Debtors abandoned the Brookland Property as a homestead in 2006, several years before filing bankruptcy, and at the time they filed bankruptcy, they lived at Sage Meadows. Despite a precarious financial situation and the inability to make

7

payments on the Sage Meadows property, the Debtors did not effectively reestablish a homestead interest in the Brookland Property. Although the Court finds credible the Debtors' stated intent to move back onto the Brookland Property once Mr. Ellis has work in the area, they had not stayed on the property or made it their home in any way at the time they filed bankruptcy. In fact, at that time, Mr. Ellis was not a truck driver or looking for work in Memphis; rather, in March 2010, a couple of months after filing for bankruptcy, the Debtors found work at a resort in Mountain Home and moved there. Furthermore, although relied on by Debtors, *Kimball* is distinguishable in that the debtor in that case was still occupying the residence at issue at the time she filed bankruptcy. *See Kimball*, 270 B.R. at 480. Additionally, in the *Dale* case, also relied on by Debtors, the Court specifically found that the debtor, Ms. Dale, never intended to abandon her property and continued to impress a homestead character upon it by keeping her belongings there, keeping the utilities connected, and collecting her mail there. Similar facts are not present here.

Because the Debtors abandoned the Brookland Property as a homestead in 2006 and did not return to it or impress upon it any characteristics of a homestead at the time they filed bankruptcy, they are not entitled to a homestead exemption on the Brookland Property, and Smith and Dorsey's objection to their claimed homestead exemption is sustained.

## CONCLUSION

For the reasons stated herein, Smith and Dorsey's *Objection to Claimed Exemptions* is hereby **SUSTAINED**.

**IT IS SO ORDERED.**

Audrey R. Evans
United States Bankruptcy Judge
Dated: 06/07/2011


cc: G. Mike DeLoache, Counsel for the Debtors
Harry S. Hurst, Counsel for Smith and Dorsey
Mark T. McCarty, Chapter 13 Trustee
U.S. Trustee